## THE STATE TREASURER *vs.* THE SOMERVILLE AND EASTON RAILROAD COMPANY.

1. A supplement to the charter of the Somerville and Easton Railroad Company provides that the company shall pay annually to the state treasurer "a tax of one half of one per centum upon the cost of *said road,* as shown by the annual report of such cost made the year preceding." The report included, as required by law, the cost of the road and equipments. *Held,* that the company are only required to pay tax upon the cost of their road and its appendages, and are not bound to pay tax upon their engines, cars, boats, or other personal property.

2. The phrase "*road, with its appendages*," in a railroad charter, does not include the equipments, cars, engines, or other personal property of the company, but is applied to the real estate.

Argued at June term, 1859, before the CHIEF JUSTICE and Justices VREDENBURGH and WHELPLEY.

*Dayton,* attorney general, for the state.

*F. T. Frelinghuysen,* for defendants.

The opinion of the court was delivered by the

CHIEF JUSTICE. By a supplement to the act to incorporate the Somerville and Easton Railroad Company, approved on the 23d of March, 1859, the company are required, within six months after the date of the said act, to pay the treasurer of this state the sum of $13,120.19, the amount of arrears of tax reported by him to be due. And in default thereof the company and the treasurer, with the aid of the attorney general, are authorized and required to submit all questions between them in reference to the amount of said tax, upon a case by them mutually to be agreed upon, to the opinion and judgment of the Supreme Court. Under the authority of this act, the questions in difference between the treasurer and the company have been submitted to the consideration and determination of this court.

The company have paid tax on three items included in their annual report, *viz.* on the cost of the road, land, and works at Elizabethport station houses and shops. The treasurer claims that the company are also bound to pay tax on three additional items included in their annual report, *viz.* upon the cost of engines, cars, and ferry interest and boats. The question at issue is, whether the company, by the terms of their charter, are required to pay tax upon the cost of the road alone, or upon the entire outlay of the company, including not only the cost of the road and its appendages but also of its equipments.

The question arises upon the eighth section of the supplement to the company's charter, approved March 17th, 1854. *Pamph. Laws,* 524. That section requires the treasurer of the company to pay annually to the treasurer of the state " a tax of one half of one per centum upon the cost of *said road,* as shown by the annual report of such

cost made the year preceding." By the terms of the enactment, the tax is limited to the *cost* of the *road* only; and whenever the term occurs in the act, it is obviously used in its limited and appropriate sense. But the annual report, by the express requirement of the act (*Nixon's Dig.* 682, § 16,) includes the cost of the road and its equipments. And it is argued that the legislature, in requiring the tax to be paid on the cost of the road, as shown by the annual report of such cost, intended to include the entire cost of road and equipments, as exhibited in the report. The natural inference would seem to be directly the reverse. The annual report, by the express provisions of the act of 1852, includes the cost of the road and equipments. The act of 1854 requires the company to pay tax on the cost of the road only, thus distinguishing clearly between the road and its equipments, and imposing the tax on the former only. *Expressio unius est exclusio alterius.*

The language of the act of 1854, standing alone, is too clear to admit of doubt. But it is insisted that, in arriving at the true construction of this act, regard must be had to the provisions of the 14th section of the original charter of 1847, (*Pamph. Laws* 134) which regulated the payment of taxes by the company. That section provides that as soon as the railroad, with its appendages, shall be finished so as to be used, the president and treasurer shall file in the office of the secretary of state, under oath or affirmation, a statement of the amount of the cost of said road, including all expenses and the amount of all purchases made by virtue of this act; and annually thereafter shall make a statement of the proceeds of said road, until the net income of said road shall amount to six per centum upon the amount of its costs; and as soon as the net proceeds of the said railroad shall amount to six per centum upon its cost the said corporation shall pay to the treasurer of this state a tax of one half of one per centum on the cost of said road.

The clause in this section requiring the company to file "a statement of the amount of the cost of the road, including all expenses and the amount of all purchases made by virtue of this act," is certainly broad enough to include as well the cost of the equipments as the cost of the road itself. It was stated, upon the argument, that such had been the practical construction given to other acts of similar import by the companies themselves; and it may be that the legislature designed that the statement filed should include the entire outlay of the company, as the basis or capital upon which the net proceeds of the road should pay six per cent. interest. And if this be conceded, it by no means follows that the legislature designed by the clause now in question to include the cost of the equipment of the road as a part of the cost of the road upon which the tax is to be assessed. It would be doing no violence to the language of the enactment to regard it as requiring simply that the statement to be filed in the office of the secretary of state should include both the cost of the road and all expenses and purchases made by the company by virtue of the act, without any design of confounding two things essentially distinct, or of designating the cost of equipment as a part of the cost of the road. When the net income of the road is to be ascertained the cost of the equipment is to be taken into account. It constitutes a part of the cost of operating the road, but is no part of the cost of the road itself.

But whatever interpretation may in practice have been given to this or similar provisions, I apprehend that the foregoing is not the true interpretation of the act, and is not in accordance with the expressed intent of the legislature. The requirements of the law may be fully answered and the fair import of its language expressed by confining its meaning exclusively to the cost of the road and its appendages. The statement is to be filed as soon as the railroad, with its appendages, shall be finished so as to be used. It may be filed before the road has been

equipped, or a dollar expended on that account. It is to be a statement of the cost of the road, and is to include all expenses and the amount of all purchases made by virtue of this act, *i. e.* all the expenses of the construction of the road, and its depots, car houses, engine houses, and other appendages, and all purchases of land and materials for their construction authorized by the act.

The same idea is more briefly expressed in the charter of the Elizabethtown and Somerville Railroad Company, which is merged in the Central Company. That charter requires the company to file in the office of the secretary of state a statement of the cost of said road, including all expenses. *Pamph. Laws* 1831, *p.* 85, § 15.

A similar provision, expressed in language somewhat variant, is contained in other railroad charters. The design of the legislature in all of them is substantially the same. It is, perhaps, most fully and clearly expressed in the charter of the New Jersey, Hudson and Delaware Railroad Company. That charter directs that the president or secretary of the company shall, within three years after the completion of the road, file in the office of the secretary of state a statement of the whole cost of the said road or roads and appendages, and annually thereafter a statement of the net proceeds thereof; and whenever the annual net proceeds of the said road shall amount to seven per centum per annum upon the cost of the said road or roads, with their appendages, the said company shall pay to the treasurer of the state the one half of one per cent. on their cost. *Harr. Com.* 396, § 16. This is the real meaning, plainly expressed, of the charter now under consideration.

In commenting upon a similar clause in the charter of the Morris and Essex Railroad, Mr. Justice Potts, in the case of *The State* v. *Minton,* 3 *Zab.* 531, expresses the opinion that the legislature intended to exempt the company's property from taxation until its income from the road should enable the stockholders to divide seven per cent. upon

"*their outlay.*" But outlay for what? Not for the repairs of the road, nor for its equipment, or furniture or operation, but for its construction.

It is notd enied that the cost of the road, as well by the existing act of 1854, as by the original charter of 1847, includes the cost of the *railroad* and its *appendages*. But what are the appendages of a railroad within the meaning of the act? An appendage is something added as an accessory to or the subordinate part of another thing. Engines and cars are no more appendages of a railroad than are wagons and carriages appendages of a highway. Both are equally essential to the enjoyment of the road—neither constitute any part of it.

In an opinion of Mr. Thompson, the attorney general of the state, in relation to the charter of this company, filed in the treasurer's office, on the 5th of January, 1855, the treasurer is advised that engines and cars are appendages of the road within the meaning of the legislature. See *Appendix to Senate Journal* 1859, *p.* 10, 99. But I think it will be found on examination that the phrase is never used by the legislature in railroad charters in any other than its ordinary and popular sense. It is never used to include the equipment, rolling stock, furniture, or other personal property of the company, but is invariably applied to its real estate—to the accessories of the road *itself*. This will be illustrated by a reference to the earliest of the railroad charters, that of the Camden and Amboy Company. The company, by section eleventh, are authorized and invested with all the rights and powers necessary to survey, lay out, and construct a railroad or roads, with all necessary *appendages*, from the Delaware river to the Raritan bay; and to do and erect all necessary works, buildings, and appendages thereof; and to take and use any stone, gravel, sand, clay, or other earth, which may be required for the construction, altering, or extending of the said road, or of any of the works or appendages thereof. And, by section 22, the legislature

may cause a valuation of the road and appendages to be made, and upon the payment of the valuation the property is vested in the state. *Harr. Com.* 280.

The term will be found to be used by the legislature in the same sense in the charter of the Paterson and Hudson River Railroad Company, § 7, 17, *Harr. Com.* 318; of the New Jersey Railroad Company, § 16, 17, *Harr. Com.* 376; of the New Jersey, Hudson and Delaware Railroad Company, § 7, 16, *Harr. Com.* 389; of the Delaware and Jobstown Railroad Company, § 14, 18, *Harr. Com.* 438; of the Somerville and Easton Railroad Company, § 6, 14, 16, *Pamph. Laws.* 1847, *p.* 128.

The judicial construction of the term has corresponded with the sense in which it has been used by the legislature. In the case of *The State* v. *Mansfield*, 3 *Zab.* 513, Mr. Justice Potts, in delivering the opinion of the court, said, "Power to construct a railroad, and establish transportation lines upon it, necessarily includes the essential *appendages* required to complete and maintain such a work or carry on such a business, as the power to erect and maintain suitable depots, car houses, water tanks, shops for repairing engines, &c., houses for switch and bridge tenders, coal or wood yards for fuel for the use of their locomotives." Of the same character are bridges, viaducts, wharves, piers, and other similar erections, which may be either convenient or necessary appendages of the road, or may be especially authorized by the charter of the company. But invariably the term is used to denote an accessory of the road, something connected with it, and either essential to its completion or to its advantageous and convenient operation.

I am of opinion that the company, by the terms of their charter, are required to pay tax upon the cost of their road and its appendages, both such as are essential to its existence and operation and such as are specially authorized by its charter; and that they are not required to pay tax upon the cost of their engines, cars, boats, or other

personal property; and that, consequently, upon the case stated there is nothing due from the company to the treasurer.